FILED

2017 OCT 10 PM 1:06

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| VALENCE TECHNOLOGY, INC., | § | |
| DEBTOR, | § | |
| | § | |
| ROTH CAPITAL PARTNERS, LLC, | § | |
| APPELLANT, | § | |
| | § | CAUSE NO. A-14-CA-0949-LY |
| V. | § | BANKRUPTCY NO. 12-11580-CAG |
| | § | (CHAPTER 11) |
| VALENCE TECHNOLOGY, INC., | § | |
| APPELLEE. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the above styled and numbered cause. Appellant Roth Capital Partners, LLC ("Roth") contends that the bankruptcy court erred by rendering the July 23, 2014 Order Denying Amended First Motion of Roth Capital Partners, LLC, For Order Directing Reimbursement of Attorneys' Fees and Costs for the Period October 9, 2013 Through May 23, 2014 (Bankruptcy Clerk's Document No. 625) ("Order Denying Reimbursement"). This court ordered briefing and, on March 16, 2015, held oral argument at which all parties were represented by counsel.[1]

The parties in this action were before the court previously in relation to Appellee Valence Technologies Inc.'s ("Valence") underlying Chapter 11 bankruptcy proceeding and the court addressed Valence's appeal alleging error in the bankruptcy court's Order Granting In Part and Denying In Part the First and Final Application of Roth Capital Partners, LLC, For Compensation and Reimbursement of Expenses of Professionals For the Period from February 6, 2013 Through October 30, 2013, signed April 29, 2014 (Bankruptcy Clerk's Document No. 574). *See Valence*

---

[1] Before the court are Roth's Appellant's Brief filed November 17, 2014 (Clerk's Document No. 9), Valence's Appellee's Brief filed December 5, 2014 (Clerk's Document No. 10), and Roth's Appellant's Reply Brief filed December 19, 2016 (Clerk's Document No. 13).

*Tech. Inc. v. Roth Capital Partners, LLC*, No. 1:14-CA-596-LY (W.D. Tex. March 31, 2015). This court affirmed the bankruptcy court's order and Roth appealed to the United States Court of Appeals for the Fifth Circuit. *Valence Tech. Inc. v. Roth Capital Partners, LLC*, No. 15-50384 (5th Cir. April 28, 2015).

The court stayed this action during the pendency of the appeal in the related case. On May 4, 2016, the circuit rendered judgment affirming the bankruptcy court's order in the related case. *Valence Tech. Inc. v. Roth Capital Partners, LLC*, 647 Fed. Appx. 438 (5th Cir. May 4, 2016). After the circuit court's mandate issued, the court held a conference in this action at which all parties were represented by counsel. All counsel agreed that no additional briefing was necessary and that the court may proceed to the merits of this action. Having considered the case file and the applicable law, the court lifts the stay and renders the following memorandum opinion and order.

**Background**

Valence is a developer and manufacturer of large-scale rechargeable lithium batteries. Valence's growth was financed primarily through secured loans of approximately $69.1 million from investor Carl Berg's company, Berg & Berg. When Valence could no longer make its loan payments, Valence filed a voluntary petition for relief under Bankruptcy Code, Chapter 11, on July 12, 2012. Valence began investigating ways to reorganize while continuing to operate as a debtor-in-possession business. Valence hired attorneys and accountants with expertise in debt restructuring. Valence was also interested in new equity investment. Valence solicited and received proposals from several investment banking firms willing to assist Valence with efforts to obtain financing for reorganizing the company. Most of the interested firms required that Valence pay retainers of at least $35,000 per month, had lengthy minimum terms of months, and required payment of percentage fees of up to 6%

of any new equity or capital raised. Two firms, however, Roth and KPMG Corporate Finance LLC ("KPMG"), negotiated employment agreements with Valence, and Valence, in turn, requested that the bankruptcy court authorize Valence to employ Roth and KPMG as investment bankers and to accept the terms of their agreements. *See* 11 U.S.C. § 327(a).[2]

By order signed February 15, 2013,[3] the bankruptcy court granted Valence's request, and approved the terms of Valence's Engagement Letters with Roth and KPMG, thereby allowing Valence to employ Roth and KPMG until confirmation of Valence's reorganization plan.[4] The Retention Order included the following provisions, which the court finds relevant in this action: (1) the court authorized Valence to employ Roth and KPMG in accordance with sections 327(a) and 328(a) of the Bankruptcy Code pursuant to the terms of their Agreement; (2) although Roth and KPMG will not be required to submit fee applications pursuant to section 330 and 331 of the Bankruptcy Code, Roth and KPMG will file final fee applications including summaries of all fees earned and expenses reimbursed in this case; (3) the terms and conditions of the Agreement are reasonable; and (4) all compensation payable to Roth pursuant to the Agreement is subject to the

---

[2] Although Title 11 of the United States Code, section 327(a) applies only to trustees, section 1107(a) gives Chapter 11 debtors-in-possession the same authority as trustees to retain section 327(a) professionals. For simplicity, in this action, the court refers only to section 327(a).

[3] Order Granting Debtor's Motion for Authorization to Employ and Retain KPMG Corporate Finance, LLC and Roth Capital Partners, LLC as Investment Bankers to the Debtor. The court refers to this order as the "Retention Order."

[4] Consistent with each of the Engagement Letters dated February 6, 2013, the court refers to the Roth Engagement Letter as the "Agreement." The Agreement was time limited to May 6, 2013, however, the bankruptcy court granted Valence's request and extended Roth's term of employment until confirmation of a chapter 11 plan of reorganization.

standard of review set forth in Section 328(a) of the Bankruptcy Code and not any other standard, including that set forth in Section 330 of the Bankruptcy Code.

The bankruptcy court rendered findings of fact and conclusions of law and confirmed the First Amended Reorganization Plan ("Plan") for Valence on November 18, 2013. Under the Plan, Berg & Berg and Valence agreed to the following: (1) Berg & Berg would convert $50 million of its prepetition secured loan to 100% of the stock in the reorganized Valence in exchange for Valence canceling all of its existing equity; (2) Berg & Berg agreed to extend Valence's maturity date of the remaining prepetition secured loan of approximately $19.1 million under a new note; and (3) Berg & Berg agreed to provide Valence a new $20 million loan for operating capital.

After confirmation of the Plan, and pursuant to the Agreement, Roth applied to the bankruptcy court seeking compensation of an additional fee, a "Success Fee."[5] Valence opposed Roth's application, arguing that the Agreement expressly excluded all debt-for-equity conversions from the types of transactions that would trigger the additional fee–the Success Fee–provision, and further, under the Agreement's terms, Berg & Berg's $20 million loan to the reorganized Valence for operating capital did not qualify as equity or equity-linked financing; rather it was an operations loan, which was beyond the scope of the Agreement.

By order rendered April 29, 2014, the bankruptcy court ruled that Roth was entitled to a Success Fee of 1.25%, based on the $50 million debt-for-equity conversion only, less $30,000 Valence paid Roth as engagement and retainer fees, for a total recovery of $595,000. The court

---

[5] The terms of KPMG and Roth's Agreements are the same. Both KPMG and Roth sought a "Success Fee" under each of their respective agreements. At the parties' request, the bankruptcy court held one evidentiary hearing, and granted KPMG's request that it be bound by the bankruptcy court's ruling on Roth's Fee Application.

denied Roth's request for a Success Fee on the $20 million operating-capital loan, concluding that the loan was debt-financing and not within the scope of the Agreement.[6]

Valence appealed the bankruptcy court's decision to this court, arguing Roth was not entitled to the Success Fee based on the terms of the Agreement. This court disagreed with Valence's arguments, affirmed the bankruptcy court's award of the Success Fee to Roth, and Valence appealed this court's decision to the Fifth Circuit, which affirmed the award of the Success Fee to Roth on May 4, 2016. *Valence Tech. Inc.,* 647 Fed. Appx. at 438.

By order signed August 12, 2016, the bankruptcy court ordered Valence to pay the Success Fee in the amount of $595,000, classified Roth's claim to the Success Fee as an "Allowed Claim," and pursuant to the Plan, ordered Valence to pay the fee to Roth in 12 equal installments, together with interest at the statutory federal judgment rate.

### Attorney's fees incurred by Roth seeking Success Fee

After the bankruptcy court ruled on April 29, 2014, that Roth was entitled to the Success Fee, Roth moved the bankruptcy court to order the reorganized Valence to reimburse Roth's attorney's fees and costs that Roth incurred in litigating the Success Fee.[7] Roth argued that based on the bankruptcy court's Retention Order and under the terms of the Agreement, these were reimbursable expenses.[8] Specifically, Roth relied on the following provision of the Agreement:

---

[6] Roth also requested its related expenses, to which no objections were raised, and the bankruptcy court awarded Roth those expenses. Roth's expenses, however, did not include any attorney's fees or costs of court incurred in seeking the Success Fee.

[7] Roth's Amended First Motion of Roth Capital Partners, LLC, For Order Directing Reimbursement of Attorney's Fees and Costs for the Period October 9, 2013 Through May 23, 2014, filed May 30, 2014 (Bankruptcy Clerk's Document No. 591) ("Roth's motion").

[8] This period of time is referred to by the parties as the "Success Fee Application Period."

5

> If the Engagement Fee, Retainer Fee, or the Success Fee (collectively, "Fees") is not fully paid when due, [Valence] agrees to pay all costs of collection or other enforcement of Roth's rights hereunder, including but not limited to attorney's fees and expenses, whether collected or enforced by suit or otherwise.[9]

Roth's motion sought $182,449.50 in attorney's fees, and $13,557.35 in costs, for a total claim of $196,006.85.

Valence urged several grounds for denying Roth's motion. Following a contested hearing, on July 22, 2014, the bankruptcy court denied Roth's motion. In so doing the bankruptcy court stated on the record in open court four reasons for its ruling: (1) Roth's motion was prematurely filed because Valence's appeal regarding liability for the Success Fee was pending before the Fifth Circuit Court of Appeals; (2) without ruling that Roth is entitled to any attorney's fees or costs of collection, if indeed Roth is entitled to the requested fees, under the provisions of the Plan, Roth's motion comes too late because the motion is an untimely request for payment of an administrative expense; (3) Valence need not pay Roth's attorney's fees and expenses because Roth's attorneys were not retained pursuant to Bankruptcy Code section 327 or 328, that is, the bankruptcy court never approved Roth's attorneys' employment; and (4) based on the holding in *ASARCO, LLC v. Jordan Hayden Womble Culbreth & Holzer, PC (In re ASARCO)*, 751 F.3d 291 (5th Cir. 2014), *aff'd, Baker Botts v. ASARCO, LLC*, _____ U.S. _____, 135 S.Ct. 2158 (2015) ("*ASARCO*"), Roth's attorney's fees and costs incurred seeking the Success Fee portion of compensation, pursuant to the terms of the Retention Order and Agreement, are not recoverable. Roth timely filed this appeal and contends that the bankruptcy court erred each rulings.

---

[9] Bankruptcy Clerk's Document No. 306, Ex. C, Doc. pg. 4.

**Jurisdiction**

The bankruptcy court's Order Denying Reimbursement signed July 23, 2014, is a final, appealable order over which this court has appellate jurisdiction. *See* 28 U.S.C. § 158(a); *see e.g., ASARCO*, 135 S.Ct. at 2158.

**Standard of review**

In reviewing a bankruptcy court's decision, the court functions as an appellate court, applying the standards of review generally applied in federal appeals: a bankruptcy court's findings of fact are reviewed for clear error and the court's conclusions of law are reviewed *de novo*. *See Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003). A finding is clearly erroneous and reversible only if, based on the entire record, the reviewing court is left "with the definite and firm conviction that a mistake has been made." *Id.* In conducting this review, the court must give due regard to the opportunity of the bankruptcy judge to determine the credibility of the witnesses. *Id.*; *see also Young v. National Union Fire Ins. Co. (In re Young)*, 995 F.2d 547, 548 (5th Cir. 1993). The issues on appeal here involve interpreting a contract, which are subject to *de novo* review. *Fina, Inc. v. ARCO*, 200 F.3d 266, 268 (5th Cir. 2000).

**Analysis**

The court reviews each of the bankruptcy court's reasons for denying Roth's motion.

### *Roth's motion is premature for review*

Roth challenges the bankruptcy court's ruling that Roth's attorney's-fees-reimbursement application was not ripe for review because the order granting Roth the Success Fee was on appeal to this court. The court finds that this basis for denying Roth its attorney's fees and costs is now moot. Valence's liability to Roth for the Success Fee is now final, and further, by order rendered

August 12, 2016, the bankruptcy court declared the Success Fee an allowed claim, and has ordered payment terms. Roth's attorney's-fees claim is at this time not premature.

### *Success Fee due upon rendition of a final order*

Roth argues that the following provision in the Agreement supports its claim for attorney's fees and costs:

> If the Engagement Fee, Retainer Fee, or the Success Fee (collectively, "Fees") is not fully paid when due, [Valence] agrees to pay all costs of collection or other enforcement of Roth's rights hereunder, including but not limited to attorney's fees and expenses, whether collected or enforced by suit or otherwise.

One of the central issues in this action is the determination of when the Success Fee was due. That question is determined by the Plan, which governs when an amount is "due" and payment of claims, including expense-reimbursement claims by professionals retained in the bankruptcy action. Under the Plan, no amounts are due until the amounts are "Allowed" by a "Final Order."

Final Order is defined by the Plan.

> "Final Order" means an order of the Bankruptcy Court or District Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for reargument or rehearing shall then be pending or . . . in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or District Court shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; *provided however*, the possibility that a timely motion under Bankruptcy Rule 9024 or any applicable analogous rule may be filed with respect to such order shall not prevent such order from being a Final Order.

In applying these provisions to the Success Fee, the circuit court rendered its opinion on May 4, 2016, after which on August 12, 2016, the bankruptcy court declared that the Success Fee was an allowed claim by Roth. Contrary to Roth's contention, and under the Plan's provisions, the court concludes that because the Success Fee was not declared due until August 12, 2016, the attorney's fees and costs incurred by Roth from October 9, 2013, its employment date, through May 23, 2014, were not expenses incurred by Roth attempting to collect the Success Fee *after it was due*, as the due date only came to pass on August 12, 2016.

Further of importance to resolution of this matter, is the recognition that pursuant to the specific provisions of Section 3 of the Agreement, Roth's "compensation," included three amounts, the Success Fee, the Engagement Fee, and the Retainer Fee. Further, the bankruptcy court's Retention Order by paragraph 11, applied Section 328(a) only to "compensation;" the Retention Order does not address or include any of Roth's attorney's fees incurred in seeking an award of the Success Fee.[10]

The court concludes that the Retention Order applies Section 328(a) to Roth's compensation only–the Retainer Fee, Engagement Fee, and Success Fee–and not to Roth's expenses. Accordingly, the court concludes that Roth's attorney's fees incurred in seeking the Success Fee, if recoverable, must be approved according to the standards of Section 330.

---

[10] Paragraph 11 of the retention order provides:

> All compensation payable to . . . Roth pursuant to the Agreements is subject to the standard of review set forth in Section 328(a) of the Bankruptcy Code and not any other standard, including that set forth in Section 330 of the Bankruptcy Code.

***Roth cannot recover its attorney's fees incurred in pursuing fees***

The bankruptcy court held that based on the reasoning in *ASARCO*, Roth's attorney's fees and costs incurred in seeking the Success Fee are not recoverable. Roth challenges that ruling, arguing that *ASARCO* does not apply because Roth is seeking reimbursement of attorney's fees and costs pursuant to the Agreement, which contains a prevailing-party fee-shifting provision. The court disagrees with Roth and concludes that the reasoning in *ASARCO* is applicable to the facts in this action.

Section 330(a)(1) provides compensation for "professionals—whether accountant, attorney, or auctioneer—for all manner of work done *in service of* the estate administrator." *ASARCO*, 135 S.Ct. at 2165 (emphasis in original). "More specifically, [Section] 330(a)(1) allows 'reasonable compensation' only for '*actual, necessary services rendered*.' That qualification is significant." *Id.* (emphasis in original). "Section 330(a)(1) does not authorize courts to award 'reasonable compensation' *simpliciter*, but 'reasonable compensation for actual, necessary services rendered by' the [] professional." *Id.* at 2167.

*ASARCO* held that the contested award at issue was tied to the estate-hired and bankruptcy-court-approved attorneys' work on the fee-defense litigation and was correctly understood only as compensation for that scope of work. *Id.* [11] Litigation in defense of a fee application is not a "service" within the meaning of Section 330(a)(1); and it follows that the contested award was not "compensation" for a "service." *Id.* Time spent litigating a fee application against the debtor-in-

---

[11] In *ASARCO* the contested award consisted of $5 million in attorney's fees expended by law firms hired with the bankruptcy court's permission for time spent by the firms litigating in defense of their fee applications. *ASARCO* ruled that this amount was beyond the law firms' scope of allowed compensation for actual, necessary services rendered by professionals hired under Section 327(a).

possession cannot be fairly described as "labor performed for"–let alone "disinterested service to"–that administrator. *Id.*

Here, similar to the facts presented in *ASARCO*, Roth seeks reimbursement of the attorney's fees and costs Roth incurred in defending its application and claim for the Success Fee. Roth's attorney's fees and costs at issue, like those in *ASARCO*, were not incurred for labor performed for, or, in service to Valence, the debtor-in-possession. The court concludes that the bankruptcy court did not err in finding that Roth's attorney's fees and costs incurred in litigating Roth's right to the Success Fee are not recoverable under *ASARCO*.

### Roth's breach-of-contract damages claim

Roth contends that it is nevertheless entitled to breach-of-contract damages, arguing that the Agreement was a contract between Roth and Valence that was approved by the bankruptcy court. Roth argues that upon the bankruptcy court's order approving the Success Fee and confirming that Roth was entitled to the Success Fee under the contract, Valence should have paid Roth the Success Fee at that point. By failing to pay the Success Fee at that particular point in time, Valence breached the Agreement, and Roth suffered damages, which included attorney's fees and expenses incurred in litigating the collection of the Success Fee. Under the specific terms of the Agreement, Roth argues its attorney's fees and expenses are reimbursable, as Roth had to undertake collection efforts, including without limitation, litigation.[12]

---

[12] The Agreement provides,

> If the . . . Success Fee [] is not fully paid when due, [Valence] agrees to pay all costs of collection or other enforcement of Roth's rights hereunder, including but not limited to attorneys' fees and expenses, whether collected or enforced by suit or otherwise.

This argument is without merit. As this court concluded, under the terms of the Plan, the Success Fee was not *due* until August 12, 2016, when the bankruptcy court determined the Success Fee to be an allowed claim. Nothing before the court reflects that any collection efforts have been required since the Success Fee became due. The court concludes that Roth has not shown that it is entitled to breach-of-contract damages.

### *Roth's motion for attorney's fees is a late request for payment of administrative expense*

Roth challenges the bankruptcy court's finding that Roth's motion was a tardy request for an administrative expense because it was not filed within the time limits set by the Plan. Roth argues that the Plan set time limits only for administrative claims that accrued before the effective date of the Plan. Roth argues that its motion related to the Success Fee, did not accrue until Roth was awarded its Success Fee by the bankruptcy court on April 29, 2014, which was more than four months after the effective date of the Plan. Thus, contends Roth, the administrative bar date set forth in the Plan is inapplicable to Roth's application for reimbursement of its attorney's fees. Further, Roth argues that the Plan is silent and makes no provision for any deadline for applications for administrative expenses incurred after the effective date of the Plan. Finally, Roth argues that it did not wait an unreasonable amount of time to seek reimbursement of its attorney's fees and costs because it filed its motion approximately one month after the claim accrued.

Valence disagrees and argues that based on the Plan's defined term–"Administrative Expense"–Roth's request for its attorney's fees is late. Valence argues that the Plan's definition of an Administrative Expense, includes the following:

> all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under sections 327, 328, 330, 331,

503 and []1103 of the Bankruptcy Code, whether fixed before or after
the Effective Date.

Therefore, Valence argues, Roth's claim is of the type classified by the Plan as an administrative expense and Roth's argument that the Plan only addresses fees and expenses incurred before the effective date runs contrary to the Plan's definition of an administrative expense. As the effective date of the Plan was December 4, 2013, the bar date for Roth to file its request for attorney's fees expenses was February 2, 2014. As Roth did not file its request until May 30, 2014, the request was beyond the bar date and the claim cannot be allowed under the Plan.

Valence also argues that a professional is not entitled to post-confirmation fees and expenses brought after the claims bar date established by the Plan. *See In re Age Refining, Inc.*, 505 B.R. 447 (Bankr. W.D. Texas 2014). "The terms of the Plan guide this Court in determining whether to allow a post-confirmation administrative claim. The express claims bar dates in the Plan and Confirmation Order indicate that the Plan does not contemplate such fees, so neither will this Court." *Id.* at 453.

The court agrees with Valence and concludes that assuming Roth could show that it is entitled to recover its attorney's fees and costs, the attorney's fees and costs related to the Success Fee are administrative expenses under the Plan. There are however, no provisions in the Plan requiring Valence to pay administrative expenses that occur after the bar date. The court concludes that the bankruptcy court did not err in ruling that Roth's attorney's fees and costs incurred in pursuing the Success Fee are not recoverable as administrative expenses.

### *Roth's attorneys were not retained pursuant to Bankruptcy Code*

Notwithstanding the court's conclusions regarding the other bases for the bankruptcy court's denial of Roth's motion, Roth challenges the bankruptcy court's holding that Roth cannot recover

its attorney's fees and costs because Roth's attorneys were never approved by the bankruptcy court. The bankruptcy court reasoned that there is no authority in the Bankruptcy Code for Valence to pay fees and expenses of professionals who are not engaged pursuant to Sections 327 or 330 of the Bankruptcy Code.

Roth argues that Section 327 is inapplicable because that section only addresses professionals employed by a bankruptcy trustee or a debtor-in-possession. Roth maintains because Roth is neither a trustee nor debtor-in-possession, Section 327 is inapplicable.

Roth argues that it was retained pursuant to Section 328 of the Code, and that its compensation plan was approved at the outset of its engagement. Under the court-approved Agreement, if Roth were required to undertake collection efforts to be paid its Success Fee, then the Agreement provided that Roth was entitled to recover from Valence any attorney's fees and expenses incurred by Roth. Roth contends that lacking from the Agreement was any requirement that Roth had to seek preapproval for retaining its counsel in the event Roth needed counsel to enforce the Agreement.

A person employed under Section 327 who seeks to employ its own professional, including an attorney, and have such fees paid by the debtor-in-possession, must first ask the bankruptcy court's permission to do so. *See In re Crafts Retail Holding Corp.*, 378 B.R. 44, 49 (Bankr. E.D.N.Y. 2007); *see also In re Ferguson*, 445 B.R. 744, 751 (Bankr. N.D. Tex. 2011) ("While Section 330(a)(1) makes an award of compensation 'subject to sections 326, 328, and 329,' sections 330 and 331 are the only provisions of the Code which authorize the payment of professionals.")

Although Roth's retention was approved by the bankruptcy court, Roth's attorneys were not. Because Roth's attorneys were not first approved by the bankruptcy court, Roth's claims for

reimbursement of its attorney's fees and costs were properly denied. The court concludes that the bankruptcy court did not err in ruling that Roth's attorney's fees and costs were not reimbursable because the attorneys were not duly appointed by the bankruptcy court.

**Conclusion**

The court concludes that the bankruptcy court's findings of fact stated on the record in open court on July 22, 2014, related to Roth's claim for reimbursement of its attorney's fees and costs for the period of October 9, 2013 through May 23, 2014, are not clearly erroneous. Additionally, the court has reviewed *de novo* the bankruptcy court's conclusions of law related to Roth's same claim for reimbursement of attorney's fees and costs, which were also stated on the record in open court on July 22, 2014. Therefore,

**IT IS ORDERED** that the stay imposed by the court on September 23, 2015, is **LIFTED**.

**IT IS FURTHER ORDERED** that the bankruptcy court's Order Denying Amended First Motion of Roth Capital Partners, LLC, for Order Directing Reimbursement of Attorney's Fees and Costs for the Period October 9, 2013 Through May 23, 2014, signed July 23, 2014 (Bankruptcy Court Clerk's Document No. 625) is **AFFIRMED**.

SIGNED this _10th_ day of October, 2017.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE